D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SABATO TORRES,

                Plaintiff,

      -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**18-CV-2156 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Sabato Torres, a teacher at a New York City Department of Education ("DOE") school, brings this action against the NYC DOE pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. (the "ADA"); 42 U.S.C. § 1983; the New York State Human Rights Law, N.Y. Exec. Law § 290, et seq. ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq. ("NYCHRL"). (Am. Compl. (Dkt. 14).) Plaintiff claims that he was denied a medical hardship transfer and denied permission to return to work from a leave of absence because of his alleged disability, Post-Traumatic Stress Disorder ("PTSD"), and in retaliation for complaining about discrimination. (Id.)

Before the court is Defendant's motion for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (See Def. Mot. for a Judgment on the Pleadings ("Mot.") (Dkt. 17).) For the reasons stated below, Defendant's motion is GRANTED IN PART and DENIED IN PART.

**I.    BACKGROUND**

Plaintiff, a Caucasian male, began working for Defendant around April 2002. (Am. Compl. ¶¶ 7-8.) In August 2014, he was hired to work at P.S./I.S. 295Q as a seventh-and-eighth grade math teacher. (Id. ¶ 9.) The school's principal, Deon-Lavigne Jones was African-

1

American. (Id. ¶¶ 10-11.) Plaintiff alleges that, during his employment at this school, he was subjected to "severe and pervasive harassment and discrimination" because of his race. (Id. ¶ 12.) Plaintiff does not, however, provide any further factual details about the alleged harassment. Plaintiff contends that he tried complaining to Lenon Murray, the Superintendent of District 29, about the discrimination in the fall of 2015, but Murray "attempted to suppress [Plaintiff's] complaint." (Id. ¶ 14.)

Allegedly, the discrimination Plaintiff suffered was so intolerable that he was eventually diagnosed with post-traumatic stress disorder ("PTSD") in May 2016. (Id. ¶ 12.) Plaintiff then applied and was approved for a leave of absence due to the anxiety and depression he was experiencing. (Id. ¶ 15.) Around August 1, 2016, Plaintiff applied for a "Hardship Transfer," which is a transfer that an employee may seek "in situations where [the] continued employment within their current assignment presents a medical or financial hardship." (Id. ¶ 16.) Around August 15, 2016, he was advised that his transfer was granted. (Id. ¶ 17.) However, Plaintiff alleges that he was told shortly afterward that, because he would not be returning to work by September 2016 due to his leave of absence, his transfer request would not be approved. (Id.)

Plaintiff alleges that around August 17, 2016, he filed a claim with the United States Equal Employment Opportunity Commission ("EEOC") wherein he complained about the discrimination and harassment to which he was subjected. (Id. ¶ 18.) Defendant received notice of this claim shortly thereafter. (Id.) Around April 6, 2017, after Plaintiff had informed Defendant that he would return to work that fall, he submitted a new Hardship Transfer request, based on the same facts as his previous request. (Id. ¶ 19.) Defendant denied his request claiming that the transfer was not medically warranted. (Id. ¶ 20.) Plaintiff alleges that Defendant's denial was retaliation for his filing a claim with the EEOC. (Id.) As a result of

Defendant's denial of his transfer application, Plaintiff remained assigned to P.S./I.S. 295Q. (Id. ¶ 21.) Plaintiff continued his medical leave. (Id. ¶ 22.)

On June 9, 2017, Plaintiff filed a complaint with the New York State Division of Human Rights, "complaining about the [] discrimination and retaliation." (Id. ¶ 24.) Plaintiff alleges that following the filing of his complaint, he was subjected to further retaliation. (Id. ¶ 25.) For instance, Plaintiff contends that in January 2018, Plaintiff asked to return to work, but Defendant allegedly refused to allow him to do so, pointing to the medical documentation he had submitted as evidence for why he should not be allowed to return. (Id. ¶¶ 25-26.)

Plaintiff alleges that although he sought to return January 15, 2018, he was not permitted to return to work until February 8, 2018. (Id. ¶ 28.) Upon Plaintiff's return, he was placed in the Absent Teacher Reserve ("ATR") and was assigned to PS118Q, teaching elementary school. (Id.)

## II. PROCEDURAL HISTORY

Plaintiff filed his initial complaint with this court on April 11, 2018. (Compl. (Dkt. 1).) On November 5, 2018, Plaintiff filed an amended complaint. (Am. Compl.) Defendant answered Plaintiff's amended complaint on December 17, 2018. (Answer (Dkt 16).) On January 24, 2019, Defendant filed a motion for a judgment on the pleadings. (Mot.)

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed R. Civ. P. 12(c). A court applies the same standard to a motion for judgment on the pleadings as that used for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). See In Re Arab Bank, PLC Alien Tort Statute Litig., 808 F.3d 144, 151 (2d Cir. 2015), as amended (Dec. 17, 2015).

When considering either, a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009)). A claim should survive if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

## IV. DISCUSSION

### A. Section 1983 Claim

In order to state a claim under § 1983, a plaintiff must allege that he has been (1) deprived of a right, privilege or immunity secured by the Constitution or laws of the United States, and that (2) this deprivation was done under color of law. 42 U.S.C. § 1983; accord Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981)). It is well established that the "under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)). The Supreme Court has held that an individual acts under the color of law when he or she exercises power "made possible only because [he or she] is clothed with the authority of state law." United States v. Classic, 313 U.S. 299, 326 (1941); see also United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999) ("The Supreme Court has broadly interpreted the color of law requirement, concluding that misuse of power, possessed by virtue of state law and made

4

possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law." (alteration adopted) (citation and internal quotation marks omitted)).

Here, Defendant seek to dismiss Plaintiff's § 1983 claim for two independent reasons: (1) "Plaintiff has failed to allege any underlying constitutional violation"; and (2) Plaintiff has failed to establish that the alleged constitutional deprivation "is the direct result of an official municipal policy or custom." (Mot. at 7-8). For the reasons provided below, the court finds that Plaintiff has failed to establish municipal liability and therefore dismisses Plaintiff's § 1983 claim.

A municipality can only be held liable under 42 U.S.C. § 1983 in the manner set forth in Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658 (1978), and its progeny, and may not be held liable under § 1983 on a theory of respondeat superior. Nagle v. Marron, 663 F.3d 100, 116 (2d Cir. 2011). In order to prevail on a § 1983 claim against a municipality, a plaintiff must show that the municipality itself caused the alleged constitutional deprivation. City of Canton v. Harris, 489 U.S. 378, 385 (1989). Plaintiff must therefore establish that an identified municipal policy or practice was the "moving force [behind] the constitutional violation." Monell, 436 U.S. at 694. Accordingly, in order to state a Monell claim, "[t]he plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries. . . . Second, the plaintiff must establish a casual connection—an 'affirmative link'—between the policy and deprivation of his constitutional rights." Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (quoting Oklahoma City v. Tuttle, 471 U.S. 808, 824 n. 8 (1985)).

A municipal policy or custom for purposes of Monell liability can be established by alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal

5

policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

Bennerson v. City of New York, No. 03-CV-10182, 2004 WL 9021667241, at *4 (S.D.N.Y. Apr. 28, 2004) (internal citations omitted).

Here, Plaintiff claims that the principal of the school is "a final policy maker," and thus municipal liability applies.[1] (Pl. Opp'n to Mot. at 9 ("Pl. Opp'n") (Dkt. 19).) Defendant notes that whether or not the principal is a "final policy maker" is of no difference because "[Plaintiff's] § 1983 claims [are] based on the denial of his transfer request and the alleged delay in his return to work from medical leave," neither of which Plaintiff attributes to the principal. (Defs. Reply in Support of Mot. ("Def's Rep.") (Dkt. 20) at 5).) Defendant further claims that Plaintiff has "doom[ed] these claims by asserting that the underlying constitutional violation imputed against the Defendant[] is a hostile work environment, a claim which he has admittedly withdrawn." (Defs. Rep. at 4).

Ultimately, the court finds that Plaintiff's complaint contains no factual assertions that the principal was responsible for either Plaintiff's transfer request or his delayed return from medical leave. (See Am. Compl.) In fact, the amended complaint contains zero factual

---

[1] Plaintiff also alleges that the "Defendant has intentionally committed, condoned or were deliberately indifferent to the aforementioned violations of Plaintiff's constitutional rights in that the Defendant's custom or practice of discriminating and/or retaliating against Plaintiff due to Plaintiff's disability to perpetuate, without abatement, in violation of Plaintiff's constitutional and statutory rights pursuant to 42 U.S.C. § 1983." (Am. Comp. ¶ 32). Such a conclusory allegation, without any facts suggesting that Defendant had a custom or practice of discrimination, is simply not enough to establish Monell liability. See, e.g., Cuevas v. City of New York, No. 07-CV-4169 (LAP), 2009 WL 4773033, at *4 (S.D.N.Y. Dec. 7, 2009) ("Baldly asserting that Plaintiff's injuries are the result of the City's policies does not show this Court what the policy is or how that policy subjected Plaintiff to suffer the denial of a constitutional right."); Brodeur v. City of New York, No. 99-CV-651 (WHP), 2002 WL 424688, at *6 (S.D.N.Y. Mar. 18, 2002) ("The complaint flatly asserts that the City had a policy of stifling, discouraging and suppressing critics of the former Mayor and his administration by arresting them. However, absent from the complaint are specific factual allegations sufficient to establish that a municipal policy or custom caused Brodeur's alleged injury.").

allegations pertaining to the principal, other than noting that he was, in fact, the principal at the time of the alleged incidents. (Id. at ¶ 10.)

Courts in this circuit routinely dismiss Monell claims that lack explicit allegations that the officials being sued had final policymaking authority. See, e.g., Zherka v. City of New York, N.Y., No. 08-CV-9005 (LAP), 2010 WL 4537072, at *4 (S.D.N.Y. Nov. 9, 2010) (dismissing plaintiff's § 1983 claim for failing to plead "that any official's actions represent official policy") (internal quotations omitted), aff'd sub nom., 459 F. App'x 10 (2d Cir. 2012) (affirming dismissal, partly on the basis that the individual official defendants were not themselves officials of the municipal defendants); Canner v. City of Long Beach, No. 12-CV-2611 (DRH), 2014 WL 2862791, at *11 (E.D.N.Y. June 23, 2014) (dismissing § 1983 claim where "plaintiffs do not reference any state law supporting their claim that [the defendant] was a final policymaker"). Where similar claims have survived past the pleadings stage, the complaints contained allegations regarding officials' final policymaking authority. See e.g., Burhans v. Cty. of Putnam, No. 06-CV-8325 (DLC), 2011 WL 1157693, at *7 (S.D.N.Y. Mar. 25, 2011) (denying the motion to dismiss where the complaint alleged final policymaking authority); Pisano v. Mancone, No. 08-CV-1045 (DC), 2009 WL 2337131, at *5 (S.D.N.Y. July 30, 2009) (denying motion to dismiss where the complaint alleged that a defendant acted under his authority as Police Chief and where the complaint quoted from employment termination notices suggesting that defendant had final rulemaking authority).

With respect to pleading final policy making authority, as stated above, the amended complaint contains little more than vague assertions the Second Circuit has already deemed inadequate to trigger a municipality's liability under Monell. See Schwab v. Smalls, 435 F. App'x 37, 40 (2d Cir. 2011). Therefore, this court cannot find that Plaintiff has adequately

7

alleged that the principal was a "final policy maker" for purposes of his § 1983 claim. See e.g., Moore v. City of New York, No. 08-CV-8879 (PGG), 2010 WL 742981, at *6 (S.D.N.Y. Mar. 2, 2010) ("[Plaintiff] cites no authority suggesting that superintendents, principals, or vice principals have such power, and her conclusory statements to that effect are insufficient to support her Monell claims."). In light of the conclusion that Plaintiff has failed to establish Monell liability, Plaintiff's § 1983 claim is hereby dismissed.[2]

### B. ADA Claims

Plaintiff alleges that he has been unlawfully discriminated against due to his "disability and/or perceived disability in violation of the [ADA] by subjecting him to a hostile work environment, adverse employment actions ... and by failing to accommodate a known disability." Plaintiff withdrew his hostile work environment claim in his response to Defendant's motion. (Pl. Opp'n at 1 n.1). The court, therefore, will address Plaintiff's discrimination, retaliation, and failure to accommodate claims below.

#### 1. *Plaintiff's Federal Discrimination and Retaliation Claims*

Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013). Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of employment discrimination. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). To establish a prima facie case, a plaintiff must show that: "(1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered adverse

---

[2] This court need not address whether Plaintiff has adequately alleged an underlying constitutional violation (Mot. at 6-7) because Plaintiff has failed to establish Monell liability.

8

employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination." Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (citing McDonnell Douglas, 411 U.S. at 802). Plaintiff's retaliation claim is also reviewed under the burden-shifting approach of McDonnell Douglas. See Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) ("Claims for retaliation [under the ADA] are analyzed under the same burden-shifting framework established for Title VII cases."). To establish a prima facie case of unlawful retaliation, a plaintiff must show "(1) participation in a protected activity; (2) the defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." See Kwan v. Andalex Grp. LLC, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotation marks and citation omitted). If the employer puts forward a non-retaliatory reason for the employment action, the plaintiff must then put forward evidence that the non-retaliatory reason is a mere pretext for retaliation. See id. at 845.

Here, Defendant contends that Plaintiff has failed to establish an adverse employment action for purposes of Plaintiff's discrimination and retaliation claims. To prove one's "employer took adverse action" against him for purposes of a discrimination claim, a plaintiff must show there was "a materially adverse change in the terms and conditions of employment." Galabaya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)). "Examples of materially adverse changes include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (quoting Galabya, 202 F.3d at 640). To establish an adverse employment action for purposes of a retaliation claim, Plaintiff must allege acts that are "harmful

9

to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010) (internal citation omitted). This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII: "[T]he antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)).

Plaintiff alleges three potential adverse employment actions: (1) the denial of his hardship transfer; (2) the refusal to return to work early following his medical leave; and (3) the transfer to the ATR. (See Pl. Opp'n.) For the reasons discussed below, the court finds that Plaintiff has failed to plausibly allege an adverse employment action under both the discrimination and retaliation standards.

   *a. Denial of Plaintiff's Transfer Request*

The denial of a transfer request may constitute an adverse employment action in certain circumstances. For example, a transfer has an adverse impact on the terms and conditions of employment if the employee: "(i) has the same job responsibilities and compensation but an increase in workload and location-specific stress; (ii) has different job responsibilities; (iii) is no longer eligible for promotion opportunities; or (iv) experiences a net loss in salary." Pimentel v. City of New York, No. 00-CV-326 (SAS), 2002 WL 977535, at *3 (S.D.N.Y. May 14, 2002), aff'd, 74 F. App'x 146 (2d Cir. 2003). An adverse employment action may also occur when an employee is transferred "from an 'elite' division . . . . which provided prestige and opportunity for advancement, to a less prestigious unit with little opportunity for professional growth." de la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Serv., 82 F.3d 16, 21 (2d Cir. 1996). Finally, a denial of a transfer request may constitute an adverse employment action

where an employee's work environment prior to the request is objectively unfavorable. See Mecklenberg v. N.Y.C. Off Track Betting, 42 F. Supp. 2d 359, 378 (S.D.N.Y. 1999) (holding that denial of a request to transfer, from a department where working conditions were objectively unfavorable due to the measurable shortage in staff, to a department where conditions were more favorable constituted an adverse employment action).

A "pure lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." Adeniji v. Admin. for Children Serv., NYC, 43 F. Supp. 2d 407, 426 (S.D.N.Y. 1999) (internal citations omitted). "[T]he mere fact that an employee has been transferred or that his job responsibilities have changed is not in itself sufficient to show an adverse change in working conditions." Cooper v. N.Y. State Dep't of Human Rights, 986 F. Supp. 825, 828 (S.D.N.Y. 1997). Thus, the denial of a request to transfer, where there are no significant change in duties or opportunities for advancement, does not constitute an adverse employment action.

Here, Plaintiff alleges that his hardship transfer request is a "transfer that an employee is entitled to seek in situations where there continued employment within their current assignment presents a medical or financial hardship." (Am. Compl. ¶ 16). Defendant contends that "Plaintiff does not allege that he sought a transfer to a position of higher rank, prestige, compensation, or any other material difference in the terms and conditions of his employment." (Mot. at 9).[3] This court agrees with Defendant that the lateral transfer request, even under the more liberal retaliation standard, fails to rise to the level of being an adverse employment action

---

[3] Plaintiff fails to address Defendant's motion with regard to whether his transfer denial constitutes an adverse action. Plaintiff's failure to respond is an independent reason to dismiss his retaliation and discrimination claims. See Martinez v. Sanders, No. 02-CV-5624 (RCC), 2004 WL 1234041, at *3 (S.D.N.Y. June 3, 2004) (finding that the plaintiff's failure to oppose dismissal of certain claims enabled the court to deem them abandoned).

11

for purposes of Plaintiff's discrimination and retaliation claims. Beyer v. Cty. of Nassau, 524 F.3d 160, 164 (2d Cir. 2008) ("A denial of a transfer may . . . constitute an adverse employment action, but we require a plaintiff to proffer objective indicia of material disadvantage; subjective, personal disappointment is not enough."(quotation marks omitted)); Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 128 (2d Cir. 2004) (concluding that the denial of an employee's request for transfer is not an adverse employment action unless the denial "created a materially significant disadvantage in her working conditions").

*b. Plaintiff's request for an early return from his leave of absence*

Defendant contends that "the time it took DOE to process Plaintiff's return to work from his leave of absence cannot support a discrimination claim." (Mot. at 11). As Defendant's motion points out, Plaintiff has not alleged that there was a "DOE policy or any law [that] entitled him to have his request to return early from leave processed immediately or by a date of his choosing." (Id. at 10.) Plaintiff does not dispute this argument in his reply. (See Pl. Opp'n.) Therefore, the court finds that Plaintiff has abandoned this argument. See also Bonilla v. Smithfield Assocs. LLC, No. 09-CV-1549 (DC), 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (holding that, because the plaintiff "fail[ed] to respond to the remaining two arguments" for dismissing certain of the claims, he had "effectively abandoned" those claims). Even if Plaintiff had not effectively abandoned this claim, the denial of his early request to return to the workplace does not amount to a material adverse action that would dissuade a reasonable employee from protesting discrimination in the workplace. Cf. Burlington Northern, 548 U.S. at 68.

### c. *Plaintiff's transfer to the Absent Teacher Reserve*

Plaintiff alleges that his placement in the ATR upon returning to work constitutes an adverse employment action for purposes of retaliation claim. (Am. Compl. ¶ 28). The court agrees with Defendant that Plaintiff has failed to allege that his transfer to the ATR is an adverse employment action. (Pl. Opp'n at 1 n.1).

Plaintiff alleges that as a result of being placed in the ATR he now teaches elementary school, as opposed to his previous position as a math teacher. (Am. Compl. ¶ 28). The mere placement of Plaintiff in the ATR does not constitute an adverse employment action for purposes of a discrimination or retaliation claim. See e.g., Harris v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y., 230 F. Supp. 3d 88, 106 (E.D.N.Y. 2017) ("Becoming a member of the ATR [] does not by itself qualify as a materially adverse employment action. Plaintiff did not experience a change in salary or benefits after she received an appropriate letter of excess, a further indication that she did not suffer an adverse employment action."); Moschetti v. N.Y.C. Dep't of Educ., No. 15-CV-3161 (KMK), 2018 WL 4759787, at *16 (S.D.N.Y. Sept. 28, 2018) ("Even assuming Plaintiff was placed on ATR status [], Plaintiff does not explain how ATR status serves as a demotion or loss of wages."); Pimentel, 2002 WL 977535, at *3 (requiring something more than an undesirable assignment to prove adverse action).

Because Plaintiff has failed to allege an adverse employment action, the court hereby dismisses Plaintiff's discrimination and retaliation claims under the ADA.[4]

---

[4] Defendant also contends that Plaintiff's retaliation and discrimination claims do not allege a "causal connection between the protected activity and the adverse employment action." (Mot. at 17.) Because the court has found that Plaintiff has failed to plead an adverse employment action, the court need not address whether there was a causal connection between the purposed adverse actions and the alleged protected activity.

13

C.  **Failure to Accommodate Claim**

An employer is liable for a failure to accommodate if: "(1) [the] plaintiff is a person with a disability under the meaning of the [applicable statute]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." McMillan, 711 F.3d at 125-26.

Defendant argues that the DOE's approval of Plaintiff's medical leave of absence demonstrates that the DOE did not, in fact, fail to accommodate Plaintiff. Defendant notes that "an employee who accepts the reasonable accommodation granted by the employer has no claim under the ADA for failure to accommodate or failure to engage in an interactive process." (Mot. at 20). Plaintiff does not respond to Defendant's argument regarding Plaintiff's granted medical leave. Rather, Plaintiff replies that he alleged that he sought a transfer, "and that despite initially being granted, it was subsequently denied with no legitimate business reason." (Pl. Opp'n at 4).

The court declines to decide whether Defendant's denial of Plaintiff's request to transfer was reasonable or not for purposes of Plaintiff's accommodation claim. The Second Circuit has recognized that, in the context of a motions on the pleadings, "[w]hile there may be claims requesting [accommodation] under the ADA that warrant dismissal as unreasonable as a matter of law," many cases require "a fact-specific inquiry," and are therefore not properly disposed of at the pleading stage. Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir. 1995). See also Tully-Boone v. N. Shore-Long Island Jewish Hosp. Sys., 588 F. Supp. 2d 419, 425 (E.D.N.Y. 2008); Goonan v. Federal Reserve Bank of New York, 916 F. Supp. 2d 470, 482 (S.D.N.Y. 2013) ("At the motion to dismiss stage, the [defendant] bears the weighty burden of showing that the fact-intensive inquiry prerequisite to a finding of reasonable accommodation falls completely

in its favor."). Because the court declines to resolve the factual dispute as to whether Plaintiff's transfer denial was reasonable the court denies Defendant's motion as to Plaintiff's accommodation claim under the ADA.

### D. NYSHRL & NYCHRL Retaliation Claims

In Plaintiff's response to Defendant's motion, Plaintiff concedes that any allegations pertaining to his NYSHRL and NYCHRL claims that occurred prior to January 2018 are barred from review in light of the election of remedies doctrine. (Pl. Opp'n. at 2-3). The remaining allegations that pertain to Plaintiff's NYSHRL and NYCHRL retaliation claims are as follows: (a) DOE "refused to accommodate him with a transfer to a different school"; (b) DOE "refus[ed] to permit him to [return] to his prior school"; and (c) DOE placed him in the ATR, when he had "previously [] been assigned to a permanent position as a math teacher" in retaliation for filing a complaint with the New York State Division of Human Rights (Am. Compl. ¶¶ 25-28).

#### 1. *NYSHRL Claim*

Plaintiff's state law retaliation claim is reviewed under the same burden-shifting approach of McDonnell Douglas as his federal retaliation claim. See Kwan, 737 F.3d at 843. Plaintiff has failed to allege a NYSHRL retaliation claim because, as described above, Plaintiff has not pled an adverse action. Accordingly, Defendant's motion as to Plaintiff's NYSHRL claim is granted.

#### 2. *NYCHRL Claim*

The NYCHRL's retaliation provision "protect[s] plaintiffs who oppose any practice forbidden under the law from conduct reasonably likely to deter a person engaging in such action." Chen v. City Univ. of N.Y., 805 F.3d 59, 76 (2d Cir. 2015) (alteration adopted) (internal quotation marks omitted). "[C]ourts must analyze NYCHRL claims separately and

15

independently from any federal and state law claims." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (citation omitted). "[T]he NYCHRL is reviewed . . . more liberally than federal or state discrimination claims, but a plaintiff still must prove 'the conduct is caused at least in part by discriminatory or retaliatory motives.'" Fenner v. News Corp., No. 09-CV-9832 (LGS), 2013 WL 6244156, at *17 (S.D.N.Y. Dec. 2, 2013) (quoting Mihalik, 715 F.3d at 113). Still, "the NYCHRL is not a general civility code." Mihalik, 715 F.3d at 113 (quotation marks omitted).

The NYCHRL does not require an adverse employment action and a plaintiff must only provide evidence she was treated "less well" than other employees based on her protected status. See, e.g., Williams v. Regus Mgmt. Grp., LLC, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011); Zambrano-Lamhaouhi v. N.Y.C. Bd. of Educ., 866 F. Supp. 2d 147, 160 (E.D.N.Y. 2011). Otherwise, a prima facie case of retaliation faces the same requirements under NYCHRL as under NYSHRL or Title VII. Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 362 (S.D.N.Y. 2012).

Here, Plaintiff provides no allegations suggesting that he was treated differently or "less well" because of his alleged disability. Plaintiff alleges that he was "treated in an hostile and abusive manner to which his similarly situated, non-Caucasian colleagues were not similarly subjected." (Am. Compl. ¶ 12). This conclusory allegation alone is not enough to establish that Plaintiff was treated "less well" than other employees. Taylor v. City of New York, 207 F. Supp. 3d 293, 308–09 (S.D.N.Y. 2016) (noting that "a plaintiff must still plead some facts that her employers' actions disadvantaged her and that the action was connected to her protected activity"); See Feliciano v. City of New York, No. 14-CV-6751 (PAE), 2015 WL 4393163, at *8 (S.D.N.Y. July 15, 2015) (dismissing NYCHRL retaliation claim where plaintiff did

16

"not plead any facts that would allow an inference that he was disadvantaged by his transfer.") (emphasis in original). Based on the facts as pled, there is an insufficient basis to find that Plaintiff has alleged a retaliation claim even under the more lenient NYCHRL standard. Therefore, Defendant's motion as to Plaintiff's NYCHRL retaliation claim is granted.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion for a judgment on the pleadings (Dkt. 17) is GRANTED IN PART and DENIED IN PART. The motion is granted with respect to the following claims, which are dismissed:

- Plaintiff's § 1983 claim;

- Plaintiff's ADA Discrimination and Retaliation Claims; and

- Plaintiff's NYSHRL and NYCHRL claims.

The motion is denied with respect to the following claim:

- Plaintiff's failure to accommodate claim.

SO ORDERED.

Dated: Brooklyn, New York
May 14, 2019

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge